**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re DAVITA INC. STOCKHOLDER DERIVATIVE LITIGATION | ) ) ) ) ) ) ) ) ) ) | C.A. No. 17-152-MPT |
| This Document Relates To: |  |  |
| ALL ACTIONS. |  |  |

## MEMORANDUM ORDER

## I.    INTRODUCTION

This matter arises from plaintiffs City of Warren Police and Fire Retirement System's and Charles Blackburn's (collectively, "Plaintiffs") Verified Consolidated Shareholder Derivative Complaint against nominal defendant DaVita Inc. ("DaVita") and defendants Kent J. Thiry, Pamela M. Arway, Charles G. Berg, Carol Anthony Davidson, Barbara J. Desoer, Paul J. Diaz, Peter T. Grauer, John M. Nehra, William L. Roper, Roger J. Valine, Robert J. Margolis, Garry E. Menzel, and James K. Hilger (collectively, "Defendants"). The initial complaint was filed on February 10, 2017, followed by two other actions, with the three matters eventually consolidated and present operative complaint amended on September 29, 2017.[1] The amended complaint alleges

---

[1] *See* D.I. 1 and 13. In the interim between the filing of the initial complaint and the present operative amended complaint, the 17-152 matter was stayed from April 4, 2017 until September 29, 2017. On August 15, 2017, the court entered an amended order which consolidated the three actions filed in this court, appointed the lead plaintiff, lead counsel and Delaware counsel and established a schedule to file a consolidated complaint. D.I. 11. As a result, the three actions 17-152 (filed February 10, 2017), 17-653 (filed May 30, 2017) and 17-709 (filed June 9, 2017) were consolidated with 17-

breaches of fiduciary duties, unjust enrichment, corporate waste and violations of Section 14(a) of the Securities Exchange Act of 1934 from at least 2015 through the present.[2]  On December 18, 2017, Defendants filed a motion to stay the Verified Consolidated Derivative Complaint pending the outcome of a motion to dismiss in a related securities action filed in the District of Colorado.[3]  Under consideration by this court is Defendants' motion to stay.  This Memorandum Order addresses whether Defendants have sufficiently established that a stay is warranted.  For the reasons stated below,  Defendants' motion to stay is granted for the limited time period so indicated.

## II.    BACKGROUND

### A.  Parties

Plaintiff City of Warren Police and Fire Retirement system is a current shareholder of DaVita stock and has continuously held this stock since at least March 2012.[4]

Plaintiff Charles Blackburn is a current shareholder of DaVita stock, which he has continuously held since at least December, 2013.[5]  Both Plaintiffs are acting for the benefit of nominal defendant DaVita.

Nominal defendant DaVita is a Delaware corporation with its principal executive offices located at 2000 16th Street, Denver, Colorado 80202.[6]

---

152.
[2] D.I. 13 at 1.
[3] D.I. 20.
[4] D.I. 13 at 7.
[5] *Id.*
[6] *Id.* at 7.

The remaining defendants are or have been either executive officers of DaVita or members of DaVita's board of directors beginning from at least 2015 to the present.[7]

## B. Background

DaVita provides, among other services, kidney dialysis in the United States for patients suffering from kidney diseases.[8] On February 1, 2017, Peace Officers' Annuity and Benefit Fund of Georgia filed a Class Action Complaint for Violation of the Federal Securities Laws against DaVita, Kent J. Thiry and James K. Hilger in the District of Colorado (the "Securities Action").[9]

Plaintiffs in the Securities Action, as purchasers of DaVita common stock, allege Defendants committed federal securities law violations and made false and/or misleading statements and/or made material omissions regarding the company's operations and profits.[10]

The Securities Action plaintiffs maintain that defendants DaVita, Thiry and Hilger, in an effort to artificially inflate DaVita's financials, caused DaVita to unlawfully "steer" patients whose dialysis treatments were covered under Medicare and Medicaid into subscribing to private insurance.[11] This activity was purportedly accomplished by promising patients that their monthly private insurance premiums would be paid by a nonprofit foundation (American Kidney Fund, or "AKF"), which was funded for this purpose by DaVita.[12]

---

[7] *Id.* at 1.
[8] D.I. 21 at 3.
[9] D.I. 22.
[10] *Id.* at 2-4.
[11] *Id.*
[12] *Id.*

The complaint in the Securities Action contends that the motivation for these "steering" practices is because private insurers pay DaVita up to $4,000 per dialysis session, while Medicare and Medicaid only pay DaVita $300 or less per session.[13] The Securities Action alleges that DaVita relied on unethical and/or illegal business practices to increase profitability.[14] The Securities Action has a pending motion to dismiss filed by the defendants on March 27, 2018.

On September 29, 2017, Plaintiffs filed a Verified Consolidated Shareholder Derivative Complaint against Defendants in this court for the benefit of nominal defendant DaVita (the "Derivative Action").[15] The complaint in the Derivative Action alleges Defendants committed breaches of fiduciary duty and engaged in unjust enrichment, corporate waste and violations of Section 14(a) of the Securities Exchange Act of 1934 from at least 2015 to the present.[16] The complaint further contends that under Defendants' stewardship, DaVita illegally or illicitly steered renal care patients with government subsidized health insurance into private health insurance plans to maximize corporate profits, and when this activity was publicized, and subsequently curtailed, DaVita's stock price dramatically dropped, causing harm to DaVita and its shareholders.[17]

On December 18, 2017, Defendants filed a motion to dismiss pursuant to FED. R. CIV. P. 12(B)(6) for failure to satisfy FED. R. CIV. P. 23.1.[18] Additionally on the same date, Defendants filed a motion to stay pending resolution of the motion to dismiss in

---

[13] *Id.* at 2.
[14] *Id.*
[15] D.I. 13.
[16] *Id.* at 1.
[17] *Id.* at 1-4.
[18] D.I. 23.

the Securities Action.[19]  Defendants allege in their motion to stay that conflicts exist for

DaVita in its positions in the two cases, the Derivative Action is contingent on the

outcome of the Securities Action, and a stay would simplify the issues and promote

judicial economy while not prejudicing Plaintiffs.[20]

On March 19, 2018, Plaintiffs filed a motion to strike materials and references

from Defendant's Memorandum in support their motion to dismiss.[21]

## III.  STANDARD OF REVIEW

The decision to grant or deny a stay is within the court's broad range of

discretionary powers.[22]  The power of this court to stay proceedings "is incidental to the

power inherent in every court to control the disposition of the causes on its docket with

economy of time and effort for itself, for counsel, and for litigants."[23]  The requester of a

stay must "make out a clear case of hardship or inequity in being required to go

forward," even if there is a possibility that the stay will damage the other party.[24]

Courts typically consider three factors in deciding whether a stay is appropriate:

1) whether the granting of a stay would cause the non-moving party to suffer undue

prejudice from any delay or allow the moving party to gain a clear tactical advantage

over the non-moving party; 2) whether a stay will simplify the issues for trial; and 3)

whether discovery is complete and a trial date set.[25]  In considering these factors, courts

---

[19] D.I. 20.
[20] D.I. 21.
[21] D.I. 28.
[22] *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F.Supp 656, 658 (D.Del. 1990).
[23] *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).
[24] *Id.* at 255.
[25] *See* e.g., *St. Clair Intellectual Prop. Consultants v. Sony Corp.*, C.A. No. 01-557-JJF, 2003 WL 25283239 at *1. (D.Del. Jan. 30, 2003), see also *Alsoy v. Çiçeksepeti Internet Hismetleri Anonim Sirketi*, 232 F. Supp. 3d 613, 620 (D. Del. 2017).

should be mindful of the consequences of the stay on the non-moving party.[26]

Where there is a request for one action to be stayed in favor of a separate action, courts do not require that the parties to both actions be the same and the issues identical.[27]

## IV.   ANALYSIS

Defendants' position is that a stay is appropriate as prosecution of this Derivative Action is antithetical to DaVita's defensive position in the Securities Action; as such, DaVita is forced to accuse its directors of violations of federal securities laws, while, at the same time, defending itself against the same allegations in the present action.[28]

Further, Defendants allege that damages in this Derivative Action largely hinge on the outcome of the Securities Action, since Plaintiffs allegedly seek to shift potential corporate losses in the Securities Action to individual directors and officers in the Derivative Action, because the common activities to both actions (diminished stock price, alleged "steering" activities) occurred on their watch.[29]  Further, Defendants argue a stay would simplify issues, promote judicial economy and does not prejudice Plaintiffs, as it is early in the Derivative Action, and resolution in Defendants' favor in the Securities Action may resolve this Derivative Action.[30]

Plaintiffs allege that current prosecution of this Derivative Action will not jeopardize DaVita's defenses in the Securities Action since Defendants do not demonstrate actual conflict as their arguments are speculative.[31]  Plaintiffs contend that

---

[26] *Dentsply Int'l, Inc.,* 734 F.Supp at 658.
[27] *Landis,* 299 U.S. at 254.
[28] D.I. 21 at 10.
[29] *Id.* at 15.
[30] *Id.* at 17.
[31] D.I. 27 at 11.

both cases are in their early stages, and therefore, it will be a while before any real risk of conflict presents itself, if at all.[32]  Further, Plaintiffs maintain that the Derivative Action is not contingent upon recovery in the Securities Action since they are two separate legal claims:  the Derivative Action seeks to recover damages from the officers and directors for their alleged improprieties, and the Securities Action seeks damages only related to the decline in stock price.[33]  Finally, Plaintiffs argue that efficiencies are not at risk in maintaining both the Derivative Action and the Securities Action, because it is in the best interest of DaVita to resolve this Derivative Action.[34]

Defendants respond that an actual and present conflict already exists between the position DaVita has taken to dismiss the Securities Action, and the theory of liability that Plaintiffs intend to pursue in this Derivative Action.[35]  Further, Defendants note a real potential exists for two different courts to issue conflicting rulings about the same facts, and there is significant overlap between the actions.[36]

The court finds that a stay of limited duration is not likely to cause undue hardship for Plaintiffs.  A stay may indeed "delay resolution of the litigation, but this alone does not warrant a finding that [p]laintiffs will be unduly prejudiced."[37]

The court finds that staying this action for a limited period will simplify the issues in the instant case:  specifically, it will relieve the tension on DaVita caused by alleging wrongful conduct in this matter while defending against substantially similar allegations

---

[32] *Id. at 13-14.*
[33] *Id.* at 14-15.
[34] *Id.* at 15-16.
[35] D.I. 33 at 3-5.
[36] *Id.* at 4.
[37] *Enhanced Sec. Research, LLC v. Cisco Systems, Inc.*, C.A. No. 09-571-JJF2010, WL 2573925 at * 3 (D. Del June 25, 2010).

of wrongful conduct in the Securities Action in the District of Colorado. Further, discovery has not begun in this district and no trial date has been set, while the motion to dismiss briefing in the Securities Action is well underway in the District of Colorado and is scheduled to be completed by June 28, 2018. A review of the challenged statements (allegations of patient "steering" and alleged false and misleading statements contained in SEC filings, press releases and investor conference calls) reveal that the core allegations of these two actions are substantially similar and center on allegedly materially false or misleading statements in Da Vita's financial statements and its failure to disclose such purported steering. Both actions focus on alleged violations of securities laws based on similar and often identical omissions relying on the same or similar documents filed with the SEC. The overlap in these two matters is significant.

Defendants have sufficiently established that a stay of a limited time period is justified. Considering that briefing on the Motion to Dismiss in the Colorado action began the end of March 2018 and is to be completed by the end of this month, this action is stayed until November 1, 2018. Therefore,

IT IS ORDERED AND ADJUDGED that this matter is stayed (D.I. 20) until November 1, 2018. Defendants shall arrange for a teleconference with this court for 1:00 p.m. Eastern time on November 1, 2018 and for a court reporter to discuss the status of the matter in the District of Colorado and how this case shall proceed in the future. Further, Defendants shall provide a copy of the issued decision of the District of Colorado to me by email with a copy to my judicial assistant, Cathleen Kennedy.

Date: June 25, 2018

_____/s/ Mary Pat Thynge_____
Chief U.S. Magistrate Judge